KLINE, J.
|2In this appeal, the trial court granted a hospital’s motion for partial summary judgment concerning a single issue, i.e., whether the hospital’s breach of the applicable standard of care caused plaintiffs’ son to contract the hepatitis “C” virus. A judgment was signed that dismissed plaintiffs’ allegations and cause of action pertaining to the hepatitis “C” virus. The judgment was designated as final for purposes of LSA-C.C.P. art. 1915(B). For the reasons that follow, we affirm the partial summary judgment.[2]
PERTINENT FACTS AND PROCEDURAL HISTORY
This litigation arises from a boating accident on May 30, 1999, when thirteen-year old Cedric Scott, Jr., was injured and taken to the Leonard J. Chabert Medical Center (Chabert) emergency room. Dr. Fadi Naddour, the emergency room doctor, diagnosed Cedric, Jr. with abrasions to his low back, contusions and complaints of abdominal pain. He was treated and released. His condition did not improve, and on June 4, 1999, he returned to Chabert where he was diagnosed with a lacerated ruptured spleen and internal bleeding. A splenectomy was performed, and after-wards, he was given two units of blood supplied by a third party blood bank. Cedric, Jr., was discharged on June 9, but returned on July 11,1999, once again complaining of abdominal pain. He was released after being diagnosed with “transient abdominal” pain. On October 28, 1999, Cedric, Jr., again returned to Cha-bert complaining of abdominal pain and nausea. Again, he was treated and released. His condition worsened, and on February 29, 2000, Cedric, Jr. was readmitted into Chabert, where he was diagnosed with jaundice; the following day, *716 test results revealed he had hepatitis “C.” Eventually, he suffered liver failure and received a transplant in 2003.
|3On October 10, 2002, Ramona Scott, wife of/and Cedric Scott, Sr., individually and as natural tutors of the minor, Cedric Scott, Jr. (hereinafter, the Scotts), filed a petition for damages against Leonard J. Chabert Medical Center, through the Board of Supervisors of Louisiana State University and Agricultural and Mechanical College, and Dr. Fadi Naddour. The petition was later amended, and the Blood Center of Southeast Louisiana, Inc. (Blood Center) was added as a defendant. The petition alleges numerous acts of negligence, including that the blood transfusion received in June 1999 caused him to contract hepatitis “C.”
The matter was submitted to the Medical Review Panel. The panel found that Dr. Fadi Naddour failed to comply with the appropriate standard of care in his treatment of Cedric, Jr. The panel also unanimously concluded that neither Cha-bert nor the Blood Center breached its applicable standard of care regarding the collection, testing, screening and distribution of the two units of blood Cedric, Jr., received.
On June 23, 2005, Chabert filed a motion for partial summary judgment on the issue of its liability regarding the blood transfusion. Chabert submitted Cedric, Jr.’s, medical records and an affidavit from Cedric, Jr.’s, physician in the liver transplant program to support its claim that the hepatitis “C” virus did not come from the blood transfusion. The medical record, dated May 16, 2002, states:
“Mr. Scott is a 16-year-old boy who probably have [sic] Hepatitis C for long time. He has been rapidly progressive for the last one year. His most recent liver biopsy showed cirrhosis with moderate inflammatory activity. He has no other underlying etiology of liver disease. I really doubt whether he acquired Hepatitis C at the time of transfusion 1999, and this is extremely unusual for hepatitis to progress this rapidly, so it’s likely that he may have acquired this before. He has a history of some pneumothorax and a chest tube placement about three days after birth....”
On July 11, 2005, the Blood Center filed a similar motion for summary judgment. In support of its motion, it submitted a physician’s affidavit stating that plaintiffs have no evidence showing that the units of blood received by Cedric, Jr., [¿were infected with hepatitis “C.” On July 29, 2005, the motions were heard; the trial court denied them on the basis that discovery was incomplete.
Nearly two years later, Chabert reasserted its motion.[3] The matter was heard on December 21, 2007. By judgment dated July 2, 2009, the trial court granted Chabert’s motion for partial summary judgment concerning the issue of hepatitis and designated it as a final judgment pursuant to LSA-C.C.P. art. 1915(B). A judgment was signed, and the Scotts appealed. By interim order dated October 5, 2010, this court remanded the matter for the limited purpose of having the trial court “sign a judgment that contains the proper decretal language identifying the specific relief granted in regards to the ‘issue of hepatitis’ ” and ordered the district court’s clerk of court to supplement the appellate record with that judgment. On October 8, 2010, the trial court signed *717 an amended judgment, which granted Cha-bert’s motion for partial summary judgment concerning the issue of hepatitis and further dismissed “plaintiffs’ allegations and cause of action pertaining to [Cedric, Jr.’s] hepatitis ‘C’ virus.” Additionally, the trial court also designated the amended judgment as a final judgment for purposes of LSA-C.C.P. art. 1915(B). We now consider the Scott’s appeal of this partial summary judgment.
FINALITY OF PARTIAL SUMMARY JUDGMENT
This court’s appellate jurisdiction extends to final judgments. LSA-C.C.P. art. 2083. A partial judgment may be a final judgment even if it does not grant the successful party all of the relief prayed for or does not adjudicate all of the issues in the case. LSA-C.C.P. art. 1915(A). Article 1915 provides in pertinent part as follows:
A. A final judgment may be rendered and signed by the court, even though it may not grant the successful party or parties all of the relief prayed for, or may not adjudicate all of the issues in the case, when the court:
1 a(3) Grants a motion for summary judgment, as provided by Articles 966 through 969, but not including a summary judgment granted pursuant to Article 966(E).
B. (1) When a court renders a partial judgment or partial summary judgment or sustains an exception in part, as to one or more but less than all of the claims, demands, issues, or theories, whether in an original demand, recon-ventional demand, cross-claim, third party claim, or intervention, the judgment shall not constitute a final judgment unless it is designated as a final judgment by the court after an express determination that there is no just reason for delay.
(2) In the absence of such a determination and designation, any order or decision which adjudicates fewer than all claims or the rights and liabilities of fewer than all the parties, shall not terminate the action as to any of the claims or parties and shall not constitute a final judgment for the purpose of an immediate appeal. Any such order or decision issued may be revised at any time prior to rendition of the judgment adjudicating all the claims and the rights and liabilities of all the parties.
As here stated, LSA-C.C.P. art. 1915(A)(3) particularly provides that partial summary judgments are final and appealable unless the summary judgment is rendered pursuant to art. 966(E), as was the judgment before us. LSA-C.C.P. art. 966(E) provides as follows:
E. A summary judgment may be rendered dispositive of a particular issue, theory of recovery, cause of action, or defense, in favor of one or more parties, even though the granting of the summary judgment does not dispose of the entire case.
Because the trial court granted Chabert’s motion for partial summary with respect to a “particular issue” as referenced in LSA-C.C.P. art. 966(E), the judgment under consideration is not final under Article 1915(A). LSA-C.C.P. art. 1915(A)(3). Thus, we consider whether it was properly designated as a final judgment pursuant to LSA-C.C.P. art. 1915(B).
PROPRIETY OF FINALITY DESIGNATION
As stated above, LSA-C.C.P. art. 1915(B)(1) provides that when a court ren *718 ders a partial judgment as to one or more but less than all of the claims, demands, issues, theories, or parties, the judgment shall not constitute a final judgment unless designated as a final judgment by the court after an express ^determination that there is no just reason for delay. Under Louisiana law, a final judgment is one that determines the merits of a controversy, in whole or in part. LSA-C.C.P. art. 1841. Although Article 1915 dispenses with finality in the sense of completion of the litigation, the judgment rendered must be sufficiently final in that it disposes of the claim or dispute in regard to which the judgment is entered. Van ex rel. v. Davis, 00-0206, p. 5 (La.App. 1 Cir. 2/16/01), 808 So.2d 478, 483. Furthermore, in determining whether a partial judgment is a final one for the purpose of an immediate appeal, a court must always keep in mind the historic policies against piecemeal appeals. Id., 00-0206 at pp. 5-6, 808 So.2d at 483.
Although the trial court designated the judgment as final, the court failed to provide reasons to support this designation. When the propriety of the certification is not apparent and the trial court has failed to give reasons for its certification, we review the case de novo using the factors listed in R.J. Messinger, Inc. v. Rosenblum, 04-1664, p. 14 (La.3/2/05), 894 So.2d 1113, 1122, as follows:
1. The relationship between the adjudicated and unadjudicated claims;
2. The possibility that the need for review might or might not be mooted by future developments in the trial court;
3. The possibility that the reviewing court might be obligated to consider the same issue a second time and;
4. Miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like.
Regarding the first factor, we observe that the only relationship between the adjudicated and unadjudicated claims is that they allege breaches of the applicable standards of care of Cedric, Jr.’s, treatment.
Regarding the second and third factors, there is little likelihood that future developments in the trial court will moot the need to review this issue. Moreover, this court would not be required to consider Chabert’s negligence on the hepatitis “C” issue a second time.
|7The fourth factor requires this court to consider miscellaneous issues affecting the efficient administration of justice. While we recognize that this partial summary judgment resolves only one of the issues on which the Scott’s claims against Cha-bert are based, we also recognize that this one issue appears to be the compelling issue in the litigation. Resolution of the hepatitis “C” claim now will promote speedy adjudication and save the parties a considerable expense in litigating this issue or preserving it for appeal. Further, resolving this issue now will shorten the time of trial.
In designating a judgment as final, “the overriding inquiry ... is whether there is no just reason for delay.” Messinger, 04-1664 at p. 14, 894 So.2d at 1122-23. Considering the Messinger factors, there is no just reason to delay disposing of the hepatitis “C” claim. Rather, the interests of judicial efficiency militates in favor of our deciding this issue. Accordingly, we turn to the merits of the appeal.
CORRECTNESS OF SUMMARY JUDGMENT
A motion for summary judgment is properly granted if the pleadings, depositions, answer to interrogatories, and ad *719 missions on file, together with affidavits, if any, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(B).
The burden of proof is on the movant. This burden does not require mover to negate all essential elements of the adverse party’s claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact. LSA-C.C.P. art. 966(C)(2).
In determining whether summary judgment is appropriate, appellate courts review evidence de novo under the same criteria that govern the trial court’s ^determination of whether summary judgment is appropriate. Roccaforte v. Wing Zone, Inc., 07-2451, p. 8 (La.App. 1 Cir. 8/21/08), 994 So.2d 126, 128. writ denied 08-2266 (La.11/21/08), 996 So.2d 1112. Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material for summary judgment purposes can be seen only in light of the substantive law applicable to this case. Id., 07-2451, p. 4, 994 So.2d at 128. The Scotts assert that genuine issues of material fact exist regarding the hospital’s breaches of the standard of care in connection with Cedric, Jr., contracting hepatitis “C” and the resulting sequelae, including, but not limited to, a liver transplant.
It is undisputed that Chabert did not supply the two units of blood at issue. Chabert’s evidence includes a document showing the chain of custody of the blood. It also shows that the blood tested negative for hepatitis. An affidavit from the blood bank indicates that the donors of the blood had been screened before donating, and that two of the three donors were retested and found negative after Cedric, Jr., was diagnosed with hepatitis “C.” The other donor could not be located, but there is no evidence he had hepatitis. Chabert also submitted the affidavit of Satheesh Nair, M.D., Cedric, Jr., treating physician. Dr. Nair stated that it was his opinion that Cedric, Jr., contracted hepatitis “C” much earlier than 1999. Moreover, two physicians stated in affidavit that it is more likely that Cedric, Jr. contracted hepatitis “C” when he was treated as a newborn for bilateral spontaneous pnemothorax.
In their opposition to Chabert’s motion for partial summary judgment, the Scotts presented no evidence to show that the blood Cedric, Jr., received was defective. Rather, their expert, William N. Grant, M.D., merely stated in his affidavit that “Hepatitis C is most commonly transmitted by blood transfusion.” He also said that, “Cedric Scott developed liver cirrhosis more likely than not secondary to his blood transfusions during the splenectomo-ny at Chabert Medical RCenter.” Dr. Grant suggested that more likely than not, hospital protocol was not adhered to, and consequently, more likely than not, Cedric, Jr., contracted Hepatitis “C” from the blood transfusion. The Scotts appear to argue that their witness’s affidavit is enough to rebut Chabert’s evidence.
To defeat Chabert’s motion for summary judgment, the Scotts must produce factual support sufficient to establish that they will be able to satisfy their evidentiary burden at trial. LSA-C.C.P. art. 966(C)(2). Dr. Grant’s statements however, are opinions unsupported by facts and insufficient to show the Scotts can win at trial. Here, they are unable to meet their burden; therefore, there is no genuine issue of material fact. Accordingly, the *720 Scotts’ assignment of error is without merit, and the summary judgment is affirmed.
DECREE
For the above stated reasons, we affirm the partial summary judgment of the trial court. The costs of this appeal in the amount of $2,484.00 are assessed to the plaintiffs/appellants, Ramona Scott, wife of/and Cedric Scott, Sr., individually and as natural tutors of the minor, Cedric Scott, Jr.
AFFIRMED
KUHN, J., Dissents & Assigns Reasons.
PETTIGREW, J., concurs.

. The Scotts filed a motion on May 26, 2010 requesting to supplement the record with documentary evidence so that Cedric Scott, Jr.'s medical records would be consolidated. In accordance with Rule 2-12.4 of the Uniform Rules of the Courts of Appeal, however, the Scotts provided appropriate page numbers for the medical records for our review. Accordingly, the motion to add documentary evidence into the record is unnecessary for this appeal and is, therefore, denied.

. The Blood Center also reasserted its motion, which was granted in June, 2009 and has not been appealed.