STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2019 CA 1145

BRADY BASS

VERSUS

DISA GLOBAL SOLUTIONS, INC., CONVENIENT CARE, L.L.C. D/B/A
TOTAL OCCUPATIONAL MEDICINE, RANDY B. BARNETT, D.O., AND
PSYCHEMEDICS CORPORATION

Judgment Rendered: __**JUN 1 2 2020**__

* * * * *

On Appeal from the
Nineteenth Judicial District Court
In and for the Parish of East Baton Rouge
State of Louisiana
Trial Court No. 661,547

The Honorable William A. Morvant, Judge Presiding

* * * * *

Pamela W. Carter
New Orleans, Louisiana

Attorney for Plaintiff/Appellant,
Brady Bass

Ann M. Halphen
Sarah N. White
Baton Rouge, Louisiana

Attorneys for Defendant/Appellee,
Convenient Care, L.L.C. d/b/a
Total Occupational Medicine

George Hardy Robinson, Jr.
Lafayette, Louisiana
    and
Holly H. Williamson
William Michael Reed
Houston, Texas

Attorneys for Defendants/Appellees,
DISA Global Solutions, Inc. and
Randy B. Barnett

Charles H. Hollis
Allison A. Fish
New Orleans, Louisiana

Attorneys for Defendant/Appellee,
Psychemedics Corporation

* * * * *

BEFORE:   HIGGINBOTHAM, PENZATO, AND LANIER, JJ.

**PENZATO, J.**

Appellant, Brady Bass, appeals a trial court judgment granting appellee's, Convenient Care, L.L.C., d/b/a Total Occupational Medicine (Total), summary judgment and dismissing all claims against it. For the reasons that follow, we reverse and remand to the trial court for further proceedings.

### FACTS AND PROCEDURAL HISTORY

Bass originally filed a petition for damages against Total, DISA Global Solutions, Inc. (DISA), Dr. Randy B. Barnett, D.O.[1], and Psychemedics Corporation (Psychemedics) averring that on January 16, 2017, he was directed to Total for the administration of an employment-related urine and hair sample drug test. Although the petition and first amended petition refer to urine and hair sample drug tests being performed, Bass also underwent a breathalyzer test for alcohol use. The results of both the alcohol and urine test were negative. However, the hair test reflected a positive result for marijuana use. Bass alleged that the drug test specimen was collected by Total under the direction of DISA trained and managed employees at Total's clinic, and that the hair sample was sent to Psychemedics for chemical analysis. Bass's first amended petition alleged that personnel at Total committed acts of negligence by collecting his hair sample in "an unsterile, disorganized, and unsanitary area while using unsterile collection equipment."[2] He further alleged that Total negligently collected his "hair sample in conditions and under a situation wherein the hair sample was likely to be mislabeled or otherwise contaminated[.]" Bass also claimed that Total personnel were negligent by not following the protocol mandated by the Substance Abuse and

---

[1] Dr. Barnett filed a declinatory exception of lack of personal jurisdiction, which the trial court granted dismissing all claims against Dr. Barnett. Subsequently, Bass filed a first amended petition for damages naming Dr. Jerome Cooper, D.O. as a defendant.

[2] By way of amendment, Bass sought to have the first amended petition to be totally substituted for the original petition.

2

Mental Health Services Administration (SAMSHA)[3] by failing to have him initial the hair sample. Bass asserted that the hair collection procedure permitted his hair sample to be erroneously identified. He averred that Total's less than sterile collection procedures and negligent handling of the hair sample led to a false-positive result for marijuana, and he sought damages resulting from the alleged false-positive drug test. Bass also alleged that Total committed acts of negligence *per se* by violating the statutory duties contained in La. R.S. 49:1001 *et seq.*, SAMHSA and PHMSA.[4]

Total filed a motion for summary judgment claiming that Bass cannot produce any facts or evidence to substantiate his allegations that Total negligently collected his hair sample or that the hair sample was likely mislabeled. In support of the motion, Total attached the first amended petition, the deposition of Matthew Guarisco,[5] along with numerous attachments, and the deposition of Bass, along with numerous attachments. Bass opposed Total's motion for summary judgment and submitted numerous exhibits therein. Total filed a reply memorandum and objected to the expert affidavit that had been submitted by Bass in opposition to the motion for summary judgment. A hearing was held on April 29, 2019, and the trial court orally granted the motion for summary judgment. On May 8, 2019, the trial court signed a judgment in accordance with its oral ruling, granting Total's motion for summary judgment and dismissing Bass's claims against Total with prejudice. It is from this judgment that Bass appeals.

---

[3] SAMHSA means the Substance Abuse and Mental Health Services Administration. La. R.S. 49:1001(8).

[4] PHMSA appears to be the United States Department of Transportation Pipeline and Hazardous Materials Safety Administration. Bass has pointed to no specific provision of either of PHMSA or SAMHSA that Total has violated.

[5] Although the deposition of Guarisco spells his name "Giarusco," he requested that the entire deposition be changed to reflect the correct spelling.

## ASSIGNMENTS OF ERROR

Bass assigns as error that the trial court erred in finding no genuine issues of material fact, in weighing summary judgment evidence, and in making inadvertent credibility determinations.

## SUMMARY JUDGMENT

Summary judgment procedure is favored and "is designed to secure the just, speedy, and inexpensive determination of every action .... and shall be construed to accomplish these ends." La. C.C.P. art. 966(A)(2). In reviewing the trial court's decision on a motion for summary judgment, this court applies a *de novo* standard of review using the same criteria applied by the trial courts to determine whether summary judgment is appropriate. *Reynolds v. Bordelon*, 2014-2371 (La. 6/30/15), 172 So. 3d 607, 610.

After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3). The only documents that may be filed in support of or in opposition to the motion are pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, written stipulations, and admissions. La. C.C.P. art. 966(A)(4).

The mover bears the burden of proving that he is entitled to summary judgment. However, if the mover will not bear the burden of proof at trial on the subject matter of the motion, he need only demonstrate the absence of factual support for one or more essential elements of his opponent's claim, action, or defense. La. C.C.P. art. 966(D)(1). If the moving party points out that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense, then the nonmoving party must produce factual support

4

sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. La. C.C.P. art. 966(D)(1); *Holmes v. Lea*, 2017-1268 (La. App. 1st Cir. 5/18/18), 250 So. 3d 1004, 1009.

In ruling on a motion for summary judgment, the trial court's role is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Janney v. Pearce*, 2009-2103 (La. App. 1st Cir. 5/7/10), 40 So. 3d 285, 289, *writ denied*, 2010-1356 (La. 9/24/10), 45 So. 3d 1078. A "genuine" issue is a triable issue, which means that an issue is genuine if reasonable persons could disagree; if on the state of the evidence, reasonable persons could reach only one conclusion, there is no need for a trial on that issue. A fact is "material" when its existence or nonexistence may be essential to plaintiff's cause of action under the applicable theory of recovery. *Kasem v. State Farm Fire & Cas. Co.*, 2016-0217 (La. App. 1st Cir. 2/10/17), 212 So. 3d 6, 13.

## LAW AND DISCUSSION

Louisiana courts have adopted a duty-risk analysis in determining whether to impose liability under general negligence principles. *Williams v. Gulf Coast Occupational Med., Inc.*, 2015-1130 (La. App. 1st Cir. 2/26/16), 2016 WL 770376, at *3 (unpublished), *writ denied*, 2016-0577 (La. 5/13/16), 191 So. 3d 1056 (*citing* La. C.C. art. 2315; *Lemann v. Essen Lane Daiquiris, Inc.*, 2005-1095 (La. 3/10/06), 923 So.2d 627, 632-633). For liability to attach under a duty-risk analysis, a plaintiff must prove: (1) the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) the defendant failed to conform his conduct to the appropriate standard (the breach of duty element); (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal

5

cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) actual damages (the damages element). A negative answer to any of the inquiries of the duty-risk analysis results in a determination of no liability. *Williams*, 2016 WL 770376, at *3 (*citing Catania ex rel. Catania v. Stephens*, 2014-1294, 2015 WL 1228521, *11 (La. App. 1st Cir. 3/17/15) (unpublished), *writs denied*, 2015-0734 and 2015-0735 (La. 6/1/15), 171 So. 3d 933, 934). Therefore, to carry the burden on summary judgment, Total was required to show an absence of factual support for any of the foregoing elements of Bass's negligence cause of action.

Total maintains that Bass failed to produce factual support for two essential elements to his claim: (1) that Total, through its employee, Matthew Guarisco, failed to conform its conduct to the appropriate standard of care; and (2) that Total's alleged substandard conduct would cause a false-positive result in a hair sample that should have tested negative for marijuana.

**Breach of Standard of Care**

Generally, under Louisiana law a person's duty toward another can be simply stated as the obligation to conform to the standard of conduct of an average reasonable man under same or similar circumstances. *Elliott v. Laboratory Specialists, Inc.*, 588 So. 2d 175, 176 (La. App. 5th Cir. 1991), *writ denied*, 592 So. 2d 415 (La. 1992). Thus, for Total to have breached any duty, first one must be owed and secondly it must have acted unreasonably in collecting the hair sample. *See Elliott*, 588 So. 2d at 176.

Total submitted the deposition of Guarisco, a certified hair sample collector, who took Bass's hair sample on January 16, 2017. Guarisco, who was certified by Psychemedics to perform hair testing, testified as to his process. Guarisco testified that he wears gloves with every test, including for hair samples. He explained that

6

in performing hair drug screens he first wipes down the table. He then opens an envelope that contains a piece of aluminum foil (foil boat), alcohol wipe, and red tamper tape seal.[6] In addition to wiping down the table, Guarisco also places a paper towel on the table and puts the foil boat on top of it. Guarisco stated that he opens the alcohol wipe and cleans the scissors in front of the patient before cutting the hair from the person's head. He then shows the patient that there is nothing inside the envelope, and he places the hair inside the foil boat, which is then placed inside the envelope. Guarisco seals the hair sample inside the envelope with two adhesive strips and slides it to the patient to place his initials on the envelope. Guarisco then places a red tamper evidence seal over the original seal.

After the envelope is sealed, the patient initials the chain of custody form,[7] and Guarisco initials, signs and dates the seal. The label bears a number which is placed on the seal of the envelope. The patient also signs the seal to acknowledge that he has not adulterated the hair sample. Guarisco folds up the chain of custody form, places it in the envelope with the hair test, seals it, and places it in Pyschemedics' bin. Guarisco stated that the chain of custody form was given to Bass to sign.

Bass claims that a question of fact remains as to whether Total breached its duty of care to ensure that the integrity of the sample is maintained by collecting the hair in an unsanitary and unsterile manner that may have resulted in a false positive test. The negligent acts that Bass complains Total committed through Guarisco were (1) collecting the hair sample in an unsanitary and disorganized manner; (2) not following the proper protocol mandated by SAMHSA and

---

[6] Although only Bass refers to the term "foil boat," we use his terminology for the sake of simplicity.

[7] The chain of custody form is entitled "Psychemedics Forensic Drug Testing Custody and Control Form."

7

Louisiana Drug Testing laws; and (3) collecting the hair sample in a situation where the hair sample was likely to be mislabeled. Bass further complains that Total committed errors by (1) failing to make lockers available; (2) failing to advise him to wash his hands; (3) failing to show him the scissors and table being wiped; (4) failing to put paper between the foil boat and the table; and (5) distractions to Guarisco during the hair trimming.

As to the protocol, Bass testified that the hair sample was taken from the back of his head with a pair of scissors. He did not recall whether Guarisco wiped down the scissors, and he did not observe the table being wiped down. Bass did not remember if Guarisco was wearing gloves. Bass testified that no sheet of paper had been placed under the foil boat to prevent the hair from contacting the table. He further stated that there was hair in the foil boat hanging off the sides and making contact with the table. He testified that the hair hanging off the foil boat was put inside the foil boat even though it had touched the table. Bass did not dispute that the hair in the foil boat was his hair, and agreed that he witnessed his hair being placed into the foil boat. After the hair sample was sealed in the foil boat, Bass signed and initialed the chain of custody form and initialed the envelope into which the hair sample was placed.

Bass also submitted the affidavit of Dana Way, a forensic scientist and chemist. She opined that errors in collection indicated that the collector was unreliable. In accordance with La. C.C.P. art. 966(D)(2), Total objected to the admissibility of Way's affidavit as not complying with La. C.C.P. art 967(A). Total asserted that an expert must have correct and complete facts in order to issue an accurate opinion. The trial court admitted the affidavit of Way over the objection of Total, but indicated that the affidavit included generalities and factual

discrepancies, and therefore, it did not support Bass's argument that there were genuine issues of material fact.

The present case is similar to *Thompson v. Center for Pediatric & Adolescent Medicine, L.L.C.*, 2017-1088 (La. App. 1st Cir. 3/15/18), 244 So. 3d 441, 444, *writ denied*, 2018-0583 (La. 6/1/18), 243 So. 3d 1062, where the trial court allowed an expert's affidavit into evidence but found it insufficient to create a genuine issue of material fact. Affidavits used to support or oppose a motion for summary judgment must comply with La. C.C.P. art. 967(A), which provides that an affidavit of an expert may set forth "opinions on the facts as would be admissible in evidence under Louisiana Code of Evidence Article 702, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Louisiana Code of Evidence article 702 permits an expert to testify in the form of an opinion if: "(1) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (2) The testimony is based on sufficient facts or data; (3) The testimony is the product of reliable principles and methods; and (4) The expert has reliably applied the principles and methods to the facts of the case." *See also Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 590-95, 113 S.Ct. 2786, 2795-98, 125 L.Ed.2d 469 (1993); *Freeman v. Fon's Pest Management, Inc.*, 2017-1846 (La. 2/9/18), 235 So. 3d 1087, 1089-90 (recognizing that *Daubert* is now codified in La. C.E. art. 702). The inadequacy of an affidavit offered in connection with a motion for summary judgment is a "formal defect," which is waived by the opponent unless he timely objects to the affidavit. *Thompson*, 244 So. 3d at 446 (*citing Independent Fire Insurance Company v. Sunbeam Corporation*, 99-2181 (La. 2/29/00), 755 So. 2d 226, 235 n.4).

9

Under La. C.C.P. art. 966(D)(2), "[a]ny objection to a document shall be raised in a timely filed opposition or reply memorandum." Pursuant to this provision, if an expert's affidavit contains opinions that lack an adequate factual basis, are not sufficiently reliable, or are otherwise inadmissible under La. C.E. art. 702 and La C.C.P. art. 967(A), the opposing party must object to the affidavit. *Thompson*, 244 So. 3d at 446 (*citing* La. C.C.P. art. 1425(F); *Adolph v. Lighthouse Property Insurance Corporation*, 2016-1275 (La. App. 1st Cir. 9/8/17), 227 So. 3d 316, 320; *Dawson v. Harmony, L.L.C.*, 2012-1580, (La. App. 1 Cir. 3/22/13), 2013 WL 1189381 (unpublished), *writ denied*, 2013-1915 (La. 11/8/13), 125 So. 3d 454). We stated in *Thompson*, "In the absence of an objection or, as here, if the objection is overruled, the trial court is now statutorily obligated to consider the expert's opinions." 244 So. 3d at 446-47 (*citing* La. C.C.P. art. 966(D)(2)). At that point, in determining whether the evidence creates a genuine issue of material fact, the trial court cannot make credibility determinations, evaluate testimony, or otherwise weigh the evidence. The trial court must assume all affiants are credible. *Thompson*, 244 So. 3d at 447.

The instant case presents the same factual scenario as in *Thompson* that the expert affidavit was objected to but admitted by the trial court. Because Way's affidavit was not excluded pursuant to Total's objection, her opinion must be considered in determining whether Bass met his burden of proving the existence of a genuine issue of material fact or that Total is not entitled to judgment as a matter of law. *See* La. C.C.P. art. 966(D)(2); *Thompson*, 244 So. 3d at 447.

Total contends that Way's opinions do not create a genuine issue of material fact because she relied on incorrect and/or incomplete facts in reaching her conclusions. However, in a motion for summary judgment, the reasoning or methodology underlying an expert's opinion are relevant only to determine

10

whether the opinions are admissible under La. C.C.P. art. 967(A) and La. C.E. art. 702. *Thompson*, 244 So. 3d at 447. Similar to the facts in *Thompson*, once Way's affidavit was admitted, Total did not seek review of the trial court's ruling by filing an answer to this appeal or seeking a supervisory writ. Therefore, the admissibility of Way's affidavit and whether the opinions therein are adequately supported to meet La. C.E. art. 702 and La. C.C.P. art. 967(A) are not before this court. We are required to consider the affidavit. *See Thompson*, 244 So. 3d at 447-48.

Bass argues that the trial court impermissibly made a credibility determination in finding that Way's affidavit did not create a genuine issue of material fact. Way's affidavit established that she reviewed several testing results from Bass, including those from the hair sample collected on January 16, 2017, which was tested by Psychemedics and retested by Omega Laboratories, Inc. (Omega). Way refers to Bass's hair sample being "problematic because the errors in the collector raise doubt about the validity and integrity of the collection process." She indicates that both the Omega and Psychemedics documents noted the collection error of missing donor initials on the specimen. Furthermore, the summary judgment documents submitted by Total include the retesting of the hair sample by Omega, which does state, "No donor initials on specimen."[8] Way specifically stated that the collection procedure, which included the lack of donor signature raised doubt about the link between Bass and the specimen submitted under his name. She indicated that the January 16, 2017 hair sample had no usable data and should not be considered due to noncompliance with drug testing protocol. Finally, she stated that the January 16, 2017 hair test "provides collector

---

[8] We note that Total submitted summary judgment evidence that Bass admitted to initialing and signing the hair sample donor form (also known as the chain of custody form) and the envelope. However, on summary judgment the trial court cannot make credibility determinations, evaluate testimony, or weigh conflicting evidence in deciding a motion for summary judgment. *Adolph*, 227 So. 3d at 321.

11

errors and urine drug test results for [Bass] are inconsistent with determining a positive drug test result." As we are required to consider the affidavit, the affidavit and deposition of Bass are sufficient to create a genuine issue of material fact as to the validity and integrity of the collection process.

## CONCLUSION

For the above and foregoing reasons, we reverse the May 8, 2019 judgment of the trial court granting summary judgment in favor of Convenient Care, L.L.C., d/b/a Total Occupational Medicine and dismissing all claims of Brady Bass against it. We remand to the trial court for further proceedings. All costs of this appeal are assessed to Convenient Care, L.L.C. d/b/a Total Occupational Medicine.

**REVERSED AND REMANDED.**