|2The plaintiffs, Melvin and Anjeanette Adolph, appeal a motion for summary judgment granted in favor of the defendant, Lighthouse Property Insurance Corporation, dismissing their claim with prejudice. The plaintiffs also appeal the trial court’s judgment granting Lighthouse’s motion to strike the affidavit and appendices of the plaintiffs’ expert from the record. For the following reasons, the judgment of the trial court is reversed in part, vacated in part, and remanded for further proceedings.
FACTUAL AND PROCEDURAL HISTORY
In October or November of 2012, the plaintiffs noticed a leaking toilet in the hallway bathroom of their home. Mr. Adolph contacted' a plumber who repaired the toilet by replacing the flange and wax ring on the toilet. In February of 2013, Mr. Adolph noticed an odor in the bedroom across from the hallway bathroom and discovered that the odor was coming from the closet in the bedroom. Mr. Adolph contacted DOW Disaster Restoration, a business providing restoration services for water and mold related issues. On February 27, 2013, Scott Dowdy, owner and mitigation specialist with DOW, inspected the plaintiffs’ home and rendered a proposal for water mitigation.[1]
On February 28, 2013, the plaintiffs made a claim to their insurance company, Lighthouse Property Insurance Corporation, for the damage allegedly sustained to their home as a result of the leaking'toilet. On March 8, 2013, Lighthouse sent an adjuster to'the plaintiffs’ home to assess the damage. Upon inspection, the adjuster found no evidence of a toilet léak in the plaintiffs’ home because all of the laminate flooring where the leak had allegedly occurred had been removed by Mr. Adolph. The adjuster conducted a moisture test and found that all of the remaining laminate flooring in the plaintiffs’ home had an elevated moisture |slevel between the floor and the foundation of the home. The adjuster concluded that the damage to , the plaintiffs’ home was caused by “the foundation [of the home] ... sweating excessively, thereby causing moisture to seep through the foundation and lodge beneath the floor.” ■
On April 4, 2013, Lighthouse hired an engineer to • inspect the plaintiffs’ home. *318 The engineer found that the floors of the plaintiffs’ home were not level and concluded that a leaking toilet in the hallway bathroom could not have caused the excess moisture or water damage to the nearest bedroom because the bedroom where the plaintiffs reported the water damage was located upslope while the bathroom with the alleged toilet leak was located , at a downslope. Thereafter, Lighthouse denied the plaintiffs coverage.
On November 25, 2014, the plaintiffs filed a petition for damages against Lighthouse alleging that the leaking toilet in their home caused Severe mold and fungi growth rendering the floor in their home useless and necessitating replacement. Lighthouse filed an answer contending that the plaintiffs’ claim fell outside the scope of coverage and that they were not entitled to compensation.
On April 6, 2016, Lighthouse filed a motion for summary judgment[2] alleging that the plaintiffs’ claim was not covered under their Lighthouse policy and that the alleged damages could not have been caused by a leaking toilet. On May 31, 2016, Mr. Dowdy re-inspected the plaintiffs’ home and performed an elevation survey.
Thereafter, on June 8, 2016, the plaintiffs filed a memorandum in opposition to Lighthouses’ motion for summary judgment arguing that Lighthouse did not | ¿make an appropriate effort to investigate the facts and circumstances surrounding the plaintiffs’ claim because its experts did not make a reasonable effort to ascertain a full investigation of the entire area of damage. The plaintiffs also submitted the affidavit, curriculum vitae, and report of Mr. Dowdy. The curriculum vitae of Mr. Dowdy stated in part that he completed over 300 water intrusion and mitigation projects. In his affidavit, Mr. Dowdy determined that while the floors were not level in the plaintiffs’, home, “a leaking toilet in the bathroom more likely than not caused excess moisture or water damage to the nearest bedroom and flooring of the [plaintiffs’] house.”
On June 20, 2016, Lighthouse fax-filed its reply memorandum in support of its motion for summary judgment,[3] which incorporated a motion to strike the affidavit and report of the plaintiffs’ expert, Mr. Dowdy. (The original of that faxed filing *319 was entered into the record on June 24, 2016.)[4] The motion stated that Mr. Dowdy was not qualified to offer an opinion in the matter because he had no experience, training, or specialized knowledge in the fields of engineering, fluid | ^mechanics, hydrodynamics, water flow, topography, geo-matics, or any similar scientific field.
On June 23, 2016, the trial court held a hearing on Lighthouses’ motion for summary judgment and motion to strike. Following arguments from both parties, the trial court granted Lighthouses’ motion to strike, finding that Mr. Dowdy was not competent to testify as to the opinion in his report. The plaintiffs’ counsel'Objected to Lighthouse’s motion to strike. The trial court noted the objection for the record. The trial court then heard arguments from the parties on Lighthouses’ motion for summary judgment. The trial court granted Lighthouses’ motion for summary judgment, finding that there were no genuine issues of material fact and' that Lighthouse was entitled to summary judgment as a matter of law. On July 11, 2016, the trial court signed a judgment in accordance with its oral ruling, granting Lighthouses’ motion for summary judgment and striking the affidavit of the plaintiffs’ expert, Mr. Dowdy, and dismissing with prejudice the plaintiffs’ claim. The plaintiffs now appeal.
DISCUSSION
In their first assignment of error, the plaintiffs argue that the trial court abused its discretion in granting Lighthouses’ motion to strike the affidavit and report of the plaintiffs’ expert, Mr. Dowdy, because he was. unqualified. The plaintiffs further argue that the hearing on Lighthouses’ motion to strike was their first and only opportunity to argue that Mr. < Dowdy was qualified to render an opinion regarding the various elevation levels in the plaintiffs’ home.
Lighthouse counters that the trial court complied with La. C.C.P. arts. 966 and 967 when granting its motion' to strike because the trial court held a hearing and determined that Mr. Dowdy’s qualifications did not show that he was competent to testify as to the complex and technical opinion in his affidavit. ^Moreover, Lighthouse argues that the motion to strike was properly granted by the trial court because the plaintiffs failed to request a continuance or request the option to supplement, the record. See La. C.C.P. arts. 967(A) and 1601.
This case raises the issue as to whether the “Motion to Strike” contained in Lighthouses’ reply memorandum is the proper pleading to challenge the qualifications of the plaintiffs’ expert, Mr. Dowdy. Under La. C.C.P. art. 966(D)(2), “[a]ny objection to a document shall be raised in a timely filed opposition or reply memorandum.” Comment (k) of La. C.C.P. art. 966 states that “[966(D)(2)'] changes prior law by specifically removing the motion to strike as a means of raising an objection to a document offered by an adverse party in support of or in opposition to a motion for summary judgment and [this *320 article] does not allow a party to file that motion.”[5] (Emphasis added.) The intent of Article 966(D)(2) was to make it mandatory that any objection to a document filed in support of or in opposition to a motion for summary judgment must be objected to in a timely filed opposition or reply memorandum and not in a “motion to strike” or other pleadings.
Filing a “Motion to Strike” in a reply memorandum is not proper. See La. C.C.P. art. 966, comment (k). The filing of such a motion in a reply memorandum would necessarily allow a party an opportunity to have a contradictory hearing and introduce evidence even though La. C.C.P. art. 966(B)(3) specifically states that “[n]o additional documents may be filed with [a] reply memorandum.”[6]
|7Any challenge to the qualifications or methodology of the plaintiffs’ expert should be filed in a pre-trial motion in accordance with La. C.C.P. art. 1425(F). Louisiana Code of Civil Procedure article 1425(F) sets out in detail the procedure which should be followed in order to challenge the qualifications of an expert or the methodology used by the expert in reaching his opinion. See Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993); Cheairs v. State ex rel. Department of Transportation & Development, 03-0680 (La. 12/3/03), 861 So.2d 536, 541. In the Louisiana Supreme Court case Independent Fire Insurance Co. v. Sunbeam Corp., 99-2181 (La. 2/29/00), 755 So.2d 226, 235, the court held that expert opinion testimony can be considered on a motion for summary judgment, stating, “[a]l-though it is true that an expert is subject to cross examination at a deposition, affidavits are subject to challenge as well, by way of a Daubert hearing, a motion to strike, or counter affidavits,” However, the revision to Article 966 eliminated the motion to strike in summary judgment proceedings and further provided that no counter affidavits may be filed in connection with a reply memorandum. Therefore, the only proper procedure to challenge the qualifications of an expert who has prepared an affidavit in opposition to a motion for summary judgment is pursuant to La. C.C.P. art. 1425, which provides guidelines and a procedure for determining the admissibility of expert opinion.[7]
*321 | ^Although Lighthouse may not challenge the qualifications of the plaintiffs’ expert in its motion to strike, we will consider the objection raised in its reply memorandum as to whether Mr. Dowdy’s affidavit should be admitted or considered by the trial' court.[8] From the plaintiffs’ expert’s affidavit and curriculum vitae, it appears that Mr. Dowdy has handled over three hundred water intrusion cases. From Mr. Dowdy’s work experience, it is reasonable to conclude that his affidavit complies with La. C.C.P. art. 967(A)[9] in that he completed an elevation survey in the plaintiffs home, and that he was competent to testify as to the cause of the plaintiffs alleged water damage.
Since the plaintiffs’ experts’ affidavit meets the requirements of La. C.C.P. art. 967(A), and a motion to challenge the qualifications of the plaintiffs’ expert under La. ■ C.C.P. art. 1426(F) was not filed, this court must accept the affidavit of Mr. Dowdy. The law is well settled that the trial court cannot make credibility determinations, evaluate testimony, or weigh conflicting evidence in making its decision whether to grant or deny a motion for summary judgment. Pumphrey v. Harris, 12-0405 (La. App. 1 Cir. 11/2/12), 111 So.3d 86, 91. Simply claiming that an expert is not qualified without any facts or competing expert opinion is insufficient. Hayne v. Woodridge Condominiums, Inc., 06-923 (La. App. 5 Cir. 4/11/07), 967 So.2d 804, 809. In this matter, Lighthouse did not offer any evidence to support its position that Mr. Dowdy was not competent to testify other than the argument of its counsel at the hearing on the motion for summary judgment.
| ¡/Therefore, we find that it was an abuse of the trial court’s discretion to rule on the qualifications of the plaintiffs’ expert without the filing of a proper motion by Lighthouse, without setting a contradictory hearing, without any evidence from Lighthouse except the argument of its counsel at the motion for summary judgment hearing, and without giving the plaintiffs an opportunity for appellate review after the trial court’s ruling on Lighthouses’ motion. We also find that the trial court abused its discretion in not admitting the affidavit of Mr. Dowdy and granting summary judgment in favor of Lighthouse. Accordingly, we will reverse the judgment of the trial court granting Lighthouse’s motion to strike the affidavit of Mr. Dowdy and vacate the motion for summary judgment in favor of Lighthouse.
CONCLUSION
For the reasons set forth above, we will reverse the judgment of the trial' court granting Lighthouses Property Insurance Corporations’ motion to strike the affidavit of Mr. Dowdy. The portion of the trial court’s judgment granting summary judgment in favor of Lighthouse Property Insurance Corporation and dismissing the plaintiffs’ claims is vacated, and we remand this matter to the trial court for further proceedings consistent with this opinion. All costs of this appeal are assessed to Lighthouse Property Insurance Corporation.
*322 REVERSED IN PART; VACATED IN PART; REMANDED.
Welch J. concurs with reasons
Crain, J. concurs and assign reasons.

. The proposal for water mitigation is not contained in record.

. Louisiana Code of Civil Procedure was amended by 2015 La. Acts, No. 422, § 1, effective January 1, 2016. Section 2 of the ■ 2015 La. Acts, No. 422, provides that: "[t]he provisions of this Act shall not apply to any motion for summary judgment pending ádjü-dication or appeal on the effective date of this Act,” Here, the filing of the motion for summary judgment was filed after the effective date of 2015 La. Acts, No. 422. Thus, the new version of La. C.C.P, art. 966 applies to the instant matter.

. The hearing on Lighthouses' motion for summary judgment was scheduled for June 23, 2016, Louisiana Code of Civil Procedure article 966(B)(3) requires that a reply memorandum be served "not less than five days prior to the .hearing on the motion.” Five days prior to the hearing was June 18, 2016, which was a Saturday (a legal holiday). Therefore, under La. C.C.P. art. 966(B)(4), the reply memorandum would be timely because it was fax-filed the next day that was not a legal holiday-June 20, 2016. However, La. C.C.P. art. 5059 states that in computing time delays, if the period of time allowed by law is less than seven days, then legal holidays are not included. It appears that La. C.C.P. art. 5059 and La. C.C.P. art. 966(B) are in.conflict in computing the time delays for filing a reply memorandum in the instant matter. Because La, C.C.P. art. 966(B) is the most current expression of legislative intent .and the time requirements provided therein are specific rather than general, it appears that La. C.C.P. art. 5059 does not apply to the instant matter. However, because the parties did not raise this issue on appeal, we decline to address the issue.

. We note that Lighthouse Complied with La. R.S. 13:850(B), which provides that within seven days, exclusive of legal holidays, after the clerk of court receives the facsimile filing, all of the following shall be delivered to the clerk of court:
(1)The original document identical to the facsimile filing in number of pages and in content of each page including any attachments, exhibits, and orders. A document not identical .to the facsimile filing or which includes pages not included in the facsimile filing shall not be considered the original document.
(2) The fees for the facsimile filing and filing of the'original document stated on the confirmation of receipt, if any.
(3) A transmission fee of five dollars.

. Prior to the revision of La. C.C.P. art. 966, a motion to strike in an opposition or reply memorandum was the proper method of challenging the admissibility of a document filed in connection with a motion for summary judgment. The motion to strike was removed in the recent amendment. See 2015 La. Acts, No, 422, effective January 1, 2016. A motion to strike under La. C.C.P. art. 964 requires a contradictory hearing where evidence may be introduced. See Citadel Builders L.L.C. v. Dirt Worx of Louisiana L.L.C., 14-2700 (La. 5/1/15), 165 So.3d 908, 910. Louisiana Uniform Rules of District Court 9.8(C) requires that a hearing on such a motion shall be scheduled at least fifteen calendar days after filing.

. If a party filing a reply memorandum needs additional documents to be filed or additional motions to be heard by the trial court, that party may either request that its motion for summary judgment be dismissed so as to allow a new motion for summary judgment to be filed that would include all necessary documents, or they may request additional time to supplement their initial motion with the necessary documents, which may necessitate the continuance of the hearing on the motion for summary judgment and allow for all of the mandatory delays under La. C.C.P. art. 966(B) to be adhered to. Lighthouse made no such requests in the instant matter.

.The qualifications and methodology of an expert who files an affidavit in support of a motion for summary judgment may be challenged by counter affidavits of experts filed in connection with a memorandum in opposition to a motion for summary judgment. However, no documents may be filed with a *321 reply memorandum. See La. C.C.P. art. 966(B)(3) and footnote 2.

. See La. C.C.P. art. 966(D)(2).

. Mr. Dowdy’s affidavit complies with La. C.C.P. art. 967(A), which states that "opposing affidavits of experts may set forth such experts’ opinions on the facts as would be admissible in evidence under Louisiana Code of Evidence Article 702, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.”